# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **KAREN GERALD JOHNSON,** | ) | **Case No. 13-03633-TOM-13** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **KAREN GERALD JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | **A.P. No. 18-00178-TOM** |
| **vs.** | ) | |
| | ) | |
| **APEX MORTGAGE** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This adversary proceeding came before the Court on December 16, 2019, for a hearing on the Defendant's Motion for Summary Judgment, the Plaintiff's Response to Motion for Summary Judgment, the Motion to Strike Response to Defendant's Motion for Summary Judgment, and for a status conference on the pretrial conference and on the Defendant's Motion for Sanctions.[1] Appearing before the Court were Jerome Tucker, attorney for Karen Gerald Johnson;[2] J. Evans Bailey, attorney for Apex Mortgage Corporation d/b/a Apex Commercial Capital; and Mary Frances Fallaw, attorney for the Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated

---

[1] Apex Mortgage Corporation filed a Motion for Sanctions with regard to a discovery dispute.

[2] It is unclear to the Court what Mr. Johnson's middle name is. The 2013 Chapter 13 petition filed by his counsel identifies him as "Karen Gerald Johnson" while the Statement of Social Security Number, also filed by his counsel, identifies him as "Karen Gerard Johnson." Some subsequent filings in the 2013 bankruptcy case by Mr. Johnson's counsel also identify him as "Karen Gerard Johnson" in the style; however, the style of the Complaint and on the interrogatories filed by the Debtor's counsel in the adversary proceeding refer to him as "Karen Gerald Johnson." The Debtor's 2013 bankruptcy case was dismissed on March 13, 2019, and a new case (19-01364) filed on March 31, 2019. The 2019 petition identifies him as "Karen Gerard Johnson."

July 16, 1984, as Amended July 17, 1984.[3]  This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[4]  This Court has considered the pleadings, the arguments of counsel, the exhibits, the testimony, and the law, and finds and concludes as follows:[5]

## **FINDINGS OF FACT**[6]

Mr. Johnson filed his Chapter 13 petition on August 12, 2013.  On June 15, 2018, he filed this adversary proceeding against Apex.  On October 21, 2019, Apex filed a Motion for Summary Judgment (the "Summary Judgment Motion," AP Doc. No. 39) and a Brief in support thereof (the "Brief," AP Doc. No. 40).  Mr. Johnson's Amended Plaintiff's Response to Defendant's Motion for Summary Judgment (the "Response," AP Doc. No. 45) was filed November 18, 2019, followed by Apex's Motion to Strike the Response on December 9, 2019.

In his Complaint Mr. Johnson alleges that Apex misappropriated insurance proceeds that were part of the bankruptcy estate, and that by doing so, Apex violated the automatic stay.  According to the Complaint, Mr. Johnson's commercial real property was struck by a car and damaged on December 31, 2016.  Mr. Johnson asserts that Apex had filed a proof of claim in his bankruptcy case and that the claim had been paid in full through the trustee by March 2017, and

---

[3] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[4] 28 U.S.C. §157(b)(2)(A) provides as follows:

> (b)(2) Core proceedings include, but are not limited to–
>
> (A) matters concerning administration of the estate[.]

[5] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).  *See also Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.").

further, that although the claim was paid in full, Apex nonetheless received $22,331.13 from Mr. Johnson's insurance company in May 2017. Mr. Johnson's position is that the insurance proceeds were property of the estate and that by receiving them Apex violated the automatic stay. In addition, Mr. Johnson asserts that Apex's willful violation caused him harm and thus he is entitled to damages and attorney fees.

Apex, however, asserts its claim in Mr. Johnson's case had not been paid off at the time Apex received money from State Farm. According to Apex in its Brief in support of the Summary Judgment Motion, it filed a proof of claim in Mr. Johnson's bankruptcy case on November 4, 2013, which was amended by this Court's Order in June 2014 to reflect a debt owed in the amount of $30,637.70. Apex claims that after the March 2017 payment, which was the last payment made to it through the Chapter 13 Trustee, the claim had a balance due of $4,949.74. Apex contends that it learned in April 2017 that State Farm had already made payments to Mr. Johnson individually on his damage claim. Believing that State Farm should have made this insurance distribution payable to both Mr. Johnson and Apex, Apex subsequently hired counsel who negotiated with State Farm. According to Apex, "[e]ventually State Farm agreed to pay funds to Apex in the amount of $22,311.13 to resolve any claims Apex may have against State Farm as a result of the breach."[7] Apex notes that it applied some of the insurance proceeds to the remaining balance on Mr. Johnson's mortgage and filed a notice of satisfaction with this Court and with the Probate Court of Jefferson County, Alabama.[8]

---

[7] At a status conference in November 2018 counsel for Mr. Johnson admitted that Mr. Johnson had received insurance proceeds from State Farm and used the proceeds to repair the building. At the same status conference, counsel for Apex made clear that the funds received by Apex from State Farm were separate and apart from the proceeds that had previously been paid to Mr. Johnson.

[8] Mr. Johnson filed a Response (AP Doc. No. 44) to Apex's Summary Judgment Motion and Brief. In the three-paragraph, two-page Response Mr. Johnson asserted only that Apex was not entitled to summary judgment because it had been "unjustly enriched" after its claim had already been paid, that Apex "withheld the payment from the Plaintiff/Debtor and the Court," and that Apex should disgorge the amount paid from State Farm along with "liquidated damages in the amount of $22,331.13 to be paid into the debtor's present case, case number 13-03633-

At a status conference on November 5, 2018, counsel for the Chapter 13 Trustee confirmed that Apex's claim had not been paid in full as of March 2017. According to the Trustee's counsel, the Trustee's office last made a payment on Apex's claim in March 2017 because the Debtor had stopped making payments to the Trustee; however, the Trustee's office did not close the claim until June 2017 after it received a notice of satisfaction of the lien and reduced the claim to the amount paid.

Mr. Johnson contends that the proceeds received by Apex are property of the estate, while Apex disagrees. According to Apex, the insurance policy Mr. Johnson obtained from State Farm contained a "standard mortgagee" clause as was required by the mortgage. *See* Summary Judgment Motion, Aff. of Boyer, AP Doc. No. 39-1; Brief, AP Doc. No. 40. Apex claims "[t]he standard clause is a <u>separate</u> and <u>independent</u> insurance contract which gives the mortgagee the first right to any proceeds payable under the policy." Brief, AP Doc. No. 40. Apex contends that it is this portion of the insurance policy that creates the separate contract:

> 2. Property General Conditions
> . . . .
>   b. Mortgageholders
>   . . . .
>     (2) We will pay for covered loss to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.
>   . . . .
>     (4) If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder [fulfills certain conditions].

Summary Judgment Motion, Doc. No. 39-3.

<hr />

TOM-13." The Court notes that the Response was filed on November 18, 2019, after Mr. Johnson's case 13-03633 had been dismissed and his current case, 19-01364, had been filed on March 31, 2019.

## CONCLUSIONS OF LAW

Apex has moved for summary judgment on all of the claims in Mr. Johnson's Complaint. Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in relevant part that

> [a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 - 23 (1986). The court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "'[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1986). Once the moving party has satisfied its burden of proof by proving the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to offer evidence of specific facts which prove the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

In the first count of his Complaint Mr. Johnson alleged that, by receiving funds from State Farm, Apex received estate property and thus willfully violated the automatic stay. The automatic stay imposed at the time of a bankruptcy filing applies to most actions taken against the debtor or

estate property. *Collier on Bankruptcy* 362.03, June 2019; 11 U.S.C. § 363(a). "Under section 541(a), and with a few enumerated exceptions, the bankruptcy estate consists of all of the *debtor's* legal and equitable property interests that existed *as of the commencement of the case . . . .*" *Id*. at 541.02, Sept. 2018. Thus, logically, the first question that must be answered is whether the insurance proceeds were property of the estate; if they were not, then the debtor has no valid claim against Apex for violating the automatic stay.

In its Brief, Apex contends that it did not violate the automatic stay because the insurance proceeds it received from State Farm were never property of the estate. According to Apex, State Farm paid funds to Apex pursuant to a "standard mortgagee clause" which created a separate contract in which Mr. Johnson had no interest.

"Under [a standard mortgage] clause the mortgagee is protected even if the insured does something to invalidate the mortgage. *In re Alexander*, 329 B.R. 919, 923 (Bankr. M.D. Ga. 2005). It has been explained that "[t]he standard mortgage clause provides mortgagees with protection against mortgagors' acts or neglect. The clause creates a separate contract of insurance between the insurer and the mortgagee, and the mortgagor's acts or neglect generally have no impact upon this contract." John W. Steinmetz and Stephen E. Goldman, *The Standard Mortgage Clause in Property Insurance Policies*, 33 Tort & Ins. L.J 81, 81-82 (1997). The property owner has no interest in the separate contract. 4 *Couch on Ins.* § 65:36 (3d ed. Dec. 2018 update). "[I]t is . . .the clause that the mortgagee is not bound by the default of the insured that gives the standard mortgage clause its distinct character." *Id*. at § 65:9.

These principles were illustrated in *In re Alexander*, where arson destroyed property of the debtor, a chicken farmer. *Alexander*, 329 B.R. at 921. The debtor's insurance company, Georgia Farm Bureau, denied the debtor's claim for failure to cooperate with an investigation but agreed

to pay the claim of the mortgage company, Wells Fargo. *Id.* The debtor, asserting that the Wells

Fargo's insurance proceeds were cash collateral, asked the court to use the proceeds to rebuild. *Id.*

However, Wells Fargo opposed the motion, arguing that the proceeds were not cash collateral. *Id.*

Examining the insurance policy, the court highlighted these provisions:

> 6. Mortgage Clause.
>    The word mortgagee includes trustee and loss payee.
>     [A] If a mortgagee is named in this policy, any loss payable will be paid to
>     the mortgagee and you [Debtor], as interests appear. If more than one
>     mortgagee is named, the order of payment will be the same as the order of
>     precedence of the mortgagees.
>     [B] If we deny your [Debtor's] claim, that denial will not apply to a valid
>     claim of the mortgagee, ....
>     ...
>     If we pay the mortgagee for any loss and deny payment to you [Debtor]:
>       a. We are subrogated to all the rights of the mortgagee granted under the
>       mortgage on the property; or
>       ...
>     Subrogation will not impair the right of the mortgagee to recover the full
>     amount of the mortgagee's claim.

*Id.* at 922. The court concluded, after considering relevant treatises and case law:

> Georgia Farm Bureau agreed to pay Wells Fargo's claim even though Debtor's
> claim was denied. The Court is persuaded that Wells Fargo's claim was paid
> pursuant to a standard mortgage clause. This clause created a separate and distinct
> contract between Wells Fargo and Georgia Farm Bureau. Wells Fargo was claiming
> in its own right as mortgagee under Section 6[B] of the fire insurance policy. The
> Court is persuaded that Debtor has no interest in the insurance proceeds paid to
> Wells Fargo. The Court will deny Debtor's Motion to Use Cash Collateral.

*Id.* at 923.

As in *Alexander*, the insurance policy in the case before this Court makes clear that even a

denial of the mortgagor's claim will not affect the right of the mortgagee to recover. The Court

determines that this language in Mr. Johnson's policy comprises a standard mortgagee clause

which creates a separate contract between Apex and State Farm. Mr. Johnson has no interest in

this separate contract, and no interest in the insurance proceeds paid by State Farm to Apex;

therefore, Mr. Johnson is not entitled to relief against Apex for violation of the automatic stay.

In his Complaint Mr. Johnson seeks damages and attorney fees from Apex. Since this Court has concluded no violation of the automatic stay occurred, Mr. Johnson is likewise not entitled to damages or attorney fees. The Court notes that, instead of being harmed by Apex's receipt of funds from State Farm, Mr. Johnson actually benefitted. Apex established that its claim had not been satisfied at the time Apex received the money, and in fact, used a portion of the funds to satisfy the claim. Mr. Johnson would have still been responsible for paying the balance of Apex's claim had Apex not done so.

Apex, as the party moving for summary judgment, has met its burden of establishing that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. Once the burden shifted to Mr. Johnson, he failed to provide evidence that a genuine issue of material fact existed. As a result, this Court determines that Apex's Summary Judgment Motion is due to be granted. Furthermore, because Apex suffered no harm or prejudice as a result of Mr. Johnson's Response, the Motion to Strike is due to be denied. In addition, Apex's Motion for Sanctions relating to the alleged failure of Mr. Johnson to respond to discovery is also due to be denied based on the Court's ruling herein regarding summary judgment. Therefore, it is

ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgment filed by Apex is **GRANTED**. It is further

ORDERED, ADJUDGED, and DECREED that the Motion to Strike is **DENIED**. It is further

ORDERED, ADJUDGED, and DECREED that the Motion for Sanctions is **DENIED**.

Dated: February 27, 2020

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm